**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff,**

v.

**Louis J. LEFKOWITZ, as Attorney General of the State of New York, and Malcolm Wilson, as Governor of the State of New York, Defendants.**

**No. 74 Civ. 4293.**

United States District Court,
S. D. New York,
Feb. 12, 1975.

Cadwalader, Wickersham & Taft, New York City, by John J. Walsh, Dean J. Landau, Peter G. Bergmann, New York City, of counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. State of N.Y., New York City, by Stanley L. Kantor, Asst. Atty. Gen., of counsel, for defendants.

Before GURFEIN, Circuit Judge, and COSTANTINO and KNAPP, District Judges.

WHITMAN KNAPP, District Judge.

This action challenges the constitutionality of a recently enacted New York statute—Chapter 119, of the Laws of 1974 (codified as Section 14-b of the Banking Law, McKinney's Consol.Laws, c. 2, and Section 5-601 of the General Obligations Law, McKinney's Consol. Laws, c. 24A) [1]—which requires mort-

---

1. The pertinent parts of Chapter 119 are:
Section 1. The banking law is hereby amended by adding thereto a new section, to be section fourteen-b, to read as follows:
§ 14-b. Power of the banking board to prescribe minimum rate of interest on mortgage escrow accounts.
1. The banking board shall have the power to prescribe, from time to time but not more often than once in every three month period, by a three-fifths vote of all its members, by regulation a minimum rate of, and method or basis of computing, interest that a mortgage investing institution shall be required to pay on each escrow account maintained with respect to a mortgage on a one to six family residence occupied by the owner and located in this state, which rate shall be greater than the rate of interest required to be paid under section 5-601 of the general obligations law.
  \*  \*  \*  \*  \*
4. In no event shall interest be required to be paid on escrow accounts where (i) there is a contract between the mortga-

gor and the mortgage investing institution, entered into before the date this subdivision shall have become a law which contains an express disclaimer of an obligation on the part of the mortgage investing institution to pay interest on such accounts, or (ii) the payment of such interest would violate any federal law or regulation, or (iii) such accounts are maintained with a mortgage servicing company, neither affiliated with nor owned in whole or in part by the mortgage investing institution, under a written contract, entered into before the date this subdivision shall have become a law, which contract does not permit the mortgage investing institution to earn or receive a return from the investment of such accounts.
§ 2. Article five of the general obligations law is hereby amended by inserting therein a new title, to be title six, to read as follows:
*Title 6. Interest On Certain Deposits*
*Section*
5-601. Interest on deposits in escrow with mortgage investing institutions.

gage lending institutions to pay interest of at least two percent on certain "escrow accounts." A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284, after a motion to dismiss had been denied. See 383 F.Supp. 1294.

Plaintiff, the Federal National Mortgage Association (FNMA), is a United States Government-sponsored private corporation organized pursuant to 12 U.S.C. § 1716 et seq. The complaint seeks preliminary and permanent injunctive relief enjoining the enforcement of Chapter 119, and a declaratory judgment that the statute is unconstitutional as applied. Defendants oppose the grant of any relief and urge the court to dismiss the complaint.

Specifically, plaintiff contends that as applied to FNMA, Chapter 119 is unconstitutional in several respects: (1) insofar as it requires FNMA to pay interest on escrow accounts established pursuant to contracts entered into prior to April 1, 1974—all of which are silent as to the requirement of such interest payments—the statute violates the contract clause, Article I, Section 10 of the Constitution; (2) insofar as it requires FNMA to pay interest on escrow accounts under mortgage contracts which are silent as to the payment of interest, but exempts from such requirement all mortgage contracts entered into prior to April 1, 1974 which expressly provide that no such interest shall be paid, the statute constitutes invidious discrimination and denies plaintiff equal protection of the laws in violation of the Fourteenth Amendment; (3) insofar as it imposes any obligation on FNMA to pay interest on escrow accounts, the statute improperly regulates and burdens the operations of a federal instrumentality in violation of Article VI of the Constitution; and (4) insofar as Section 10.-2(c)(1) of the General Rules and Regulations of the New York State Banking Board[2] operates to require FNMA to pay two percent interest on escrow funds received under terms of mortgage contracts dated after April 1, 1974, but which are held by servicers rather than FNMA, it deprives FNMA of an exemption conferred by Section 14-b(4)(iii) of the Banking Law in violation of the Due Process Clause of the Fourteenth Amendment.

We hold that all of plaintiff's constitutional arguments must be rejected, and that its application for permanent injunctive relief and a declaratory judgment must be denied.

## I. FACTS

This case was submitted to this three-judge court pursuant to an agreed

---

§ 5–601. Interest on deposits in escrow with mortgage investing institutions

Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the banking board pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher. The banking board shall prescribe by regulation the method or basis of computing any minimum rate of interest required by this section and any such minimum rate shall be a net rate over and above any service charge that may be imposed by any mortgage lending institution for maintaining an escrow account. No mortgage investing institution shall impose a service charge in connection with the maintenance of an escrow account unless provision therefor was expressly made in a loan contract executed prior to the effective date of this act.

2. (c) The exemption under Section 14-b, subd. 4(iii) of the Banking Law shall apply only if

(1) the date of the servicing contract as well as the mortgage in question predate April 1, 1974, and

(2) the servicing contract expressly precludes the mortgage investing institution owning such mortgage from earning or receiving a return from the investment of funds of such escrow accounts, or if the contract, though silent on the question, effectively does not permit such institution from earning or receiving such return.

statement of facts. FNMA is a United States Government-sponsored private corporation organized under 12 U.S.C. § 1716 et seq. As mandated by Congress, FNMA provides supplementary assistance to the secondary market for home mortgages by providing a degree of liquidity for mortgage investments, thereby improving the distribution of investment capital available for home mortgage financing. See 12 U.S.C. § 1716(a) and § 1719(a)(1). The Secretary of Housing and Urban Development has general regulatory power over FNMA to ensure that the corporation does in fact carry out its Congressionally-mandated functions. See 12 U.S.C. § 1723a(h). Generally, FNMA assists the secondary mortgage market by buying mortgages from investors and mortgage companies which originate such mortgages and service those mortgages sold to FNMA for a fee (commonly referred to in the trade as "Servicers"). Currently, FNMA owns only FHA-insured or VA-guaranteed mortgages in New York.

Under the standard mortgage contract utilized by the homeowner-mortgagor and the original mortgagee (i. e. the contract which FNMA purchases), the mortgagor is required to make monthly payments to cover various annual charges for insurance premiums and taxes. These payments, which are required to protect the mortgagee's interest in case the property is damaged or foreclosed, are held in escrow by the mortgagee, and are then paid by the mortgagee when the insurance premiums or taxes fall due. It is upon these escrow accounts that Chapter 119 requires interest payments to be made to the homeowner by the mortgage lending institution.

It is undisputed that FNMA receives only a portion of the escrow payments collected by its servicers. On mortgages purchased prior to August 10, 1970, FNMA receives sixty percent of the escrow payments. To the extent that such mortgages are still being paid off,

FNMA still receives these funds. Chapter 119, if applicable to FNMA, would have the effect of requiring FNMA to pay at least two percent interest on those escrow accounts to the original mortgagor. To the extent FNMA receives the escrow funds, it now uses the money as part of its working capital.

With respect to mortgages acquired after August 10, 1970, FNMA does not receive any of the escrow payments. Its servicers retain the payments and use them as they see fit. Therefore, for post August 10, 1970 mortgages dated prior to April 1, 1974, FNMA would be exempt from paying interest under Chapter 119. See Section 14-b(4)(iii) of Chapter 119, and Section 10.2(c)(1) of the regulations promulgated thereunder. Under the above regulations, however, the exemption would not extend to mortgages dated after April 1, 1974 and serviced pursuant to a servicing contract dated prior to April 1, 1974. Thus, on these mortgages, FNMA would be required to pay interest on these escrow accounts even though it receives none of the escrow monies.

## II. DISCUSSION

### A.

■ For the reasons stated in the companion case of *Jamaica Savings Bank v. Lefkowitz* (E.D.N.Y.1975) 390 F.Supp. 1357 (three-judge court), we reject plaintiff's claim that Chapter 119 violates the Contract or the Equal Protection clauses of the Constitution.

### B.

What distinguishes this action from *Jamaica Savings Bank* is plaintiff's argument pursuant to Article VI of the Constitution. Specifically, FNMA maintains that the imposition by New York State of an obligation to pay interest on escrow funds interferes with its ability to discharge its Congressionally-mandated function and thus is violative of the

Supremacy Clause of the Constitution.[3] For the reasons which follow, we also reject this contention.

■ First of all, we find in plaintiff's favor on the threshold question to the Supremacy Clause claim, i. e. we find that FNMA is in fact a federal instrumentality. A glance at the federal legislation involved, 12 U.S.C. § 1716 et seq., leaves little doubt that Congress intended FNMA to be recognized as a federal instrumentality. As mentioned above, FNMA is subject to the general regulatory power of the Secretary of Housing and Urban Development. 12 U.S.C. § 1723a(h). The Secretary of the Treasury also has specific regulatory power over certain of FNMA's financial transactions, and is authorized to purchase and hold as much as two billion dollars in obligations issued by FNMA. See 12 U.S.C. § 1719. Furthermore, Congress has exempted FNMA from having to qualify to do business in any state, 12 U.S.C. § 1723a(a), and has cloaked FNMA with immunity from state taxation (with the exception of real estate taxes), 12 U.S.C. § 1723a(c)(1). It is clear that FNMA performs a significant governmental function in its secondary mortgage market operations, see 12 U.S.C. §§ 1716(a), 1719(a)(1), and that the federal government has an extensive interest and involvement in mortgage market assistance.

■ Having thus determined that FNMA is a federal instrumentality, it is next necessary to inquire whether the challenged state legislation can constitutionally be applied. It is clear that in certain circumstances, depending on congressional authorization, a federal instrumentality may be subject to state law. In Mayo v. United States (1943) 319 U.S. 441, at 446, 63 S.Ct.

1137, 1140, 87 L.Ed. 1504, the Supreme Court, per Reed, J., observed:

"It lies within Congressional power to authorize regulation, including taxation, by the state of federal instrumentalities. . . . There are matters of local concern within the scope of federal power which in the silence of Congress may be regulated in such manner as does not impair national uniformity. There are federal activities which in the absence of specific Congressional consent may be affected by state regulation."

In the case at bar, Congress has not indicated whether FNMA should be exempt, from the type of state regulation established by Chapter 119. In the absence of such a specific authorization, we find that the payment of interest on the escrow accounts does not impose such a burden on the performance of FNMA's function as to invalidate the statute.

The case presenting the closest analogy to the situation at bar is Anderson National Bank v. Luckett (1944) 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692. Under a Kentucky statute, all banks in Kentucky—including national banks—were required to turn over to the state any deposits which had remained inactive and unclaimed for a specified period of time. In the absence of such a statute, the banks presumably would have had full use of the funds until—if ever —they were claimed. The statute further required the banks to file annual reports on any accounts thought to be abandoned.

A federal national bank brought suit claiming among other things that the Supremacy Clause barred implementation of the statute. The Supreme Court rejected the contention of the federal instrumentality and upheld the statute for reasons which seem applicable to this ac-

---

3. Article VI, Clause 2, of the Constitution provides in pertinent part:

"This Constitution, and the Laws of the United States which shall be made in pur-

suance thereof . . . shall be the supreme Law of the Land."

tion. First, the Court noted that the law in no way discriminated against national banks since it directed payment to the state by state and national banks alike. Secondly, the court noted that it did not "find any word in the national banking laws which expressly or by implication conflicts with the provisions of the Kentucky statutes." 321 U.S. at 247–8, 64 S.Ct. at 607. And finally, the Court stated that there was no undue burden on the national bank's performance of its functions. The account was "a chose in action of the depositor against the bank, . . . part of the mass of property within the state whose transfer and devolution is subject to state control." 321 U.S. at 248, 64 S.Ct. at 607. The court indicated that the statute did nothing more than regulate the devolution of bank accounts of missing persons, and that upon payment of the accounts to the state, the bank's obligation was discharged. In such circumstances, the Court upheld the challenged regulation observing, per Chief Justice Stone (321 U.S. at 248–249, 64 S.Ct. at 607):

> "Something more than this is required to render the statute obnoxious to the federal banking laws. For an inseparable incident of a national bank's privilege of receiving deposits is its obligation to pay them to the persons entitled to demand payment according to the law of the state where it does business. A demand for payment of an account by one entitled to make the demand does not infringe or interfere with any authorized function of the bank."

As in *Anderson,* the state law at issue here does not discriminate against FNMA as a federal mortgage lending institution. Indeed, we have held in the companion case of Jamaica Savings Bank v. Lefkowitz, *supra,* that New York State may constitutionally impose the obligation to pay interest on escrow accounts held by state mortgage lending institutions. Furthermore, as noted above, there is nothing in Chapter 119 which explicitly conflicts with either a federal statute or regulation.

As to the burden imposed on FNMA's federally mandated-function by Chapter 119, we hold that although the burden may be somewhat greater than that found in *Anderson,* the statute is not so burdensome as to violate the Supremacy Clause.

Based on the facts as set forth above, the burdens imposed on FNMA by Chapter 119 appear to be twofold: (1) the statute requires it to pay at least two percent interest on the sixty percent of the escrow fees it receives under mortgages purchased prior to August 10, 1970; and (2) the statute, as interpreted by the Banking Board regulation 10.-2(c)(1), would require FNMA to pay interest on escrow accounts from mortgages dated after April 1, 1974.

These burdens seem insignificant. At the outset it should be noted that Chapter 119 in no way purports to, or does directly interfere with FNMA's Congressionally mandated function of providing supplementary assistance to the secondary market for home mortgages. The statute in no way seeks exactions on any of FNMA's obligations or capital assets. All that New York State has done is to act upon funds which are kept by FNMA for the ultimate benefit of the original homeowner-mortgagor. The purpose of prepaying certain insurance and tax expenses is not to provide FNMA with income but rather to protect the mortgagees' interest in the mortgaged property. Chapter 119 in no way impairs this purpose. It is also significant that the statute does not regulate how FNMA must keep or invest the escrow funds in its possession. Thus, there is no attempt by the state to interfere directly with the internal management of the corporation.

FNMA contends that the interest obligation imposes an undue economic burden on the operation and administration of FNMA. Currently, when FNMA receives the escrow payments, the money is put into FNMA's general fund and is

used as working capital. Plaintiff argues that if Chapter 119 were sustained, FNMA would be forced to divert these funds to other uses in order to meet the added expense of the interest obligation. The end result, FNMA urges, would be that New York State would have effectively dictated the internal administration of FNMA's assets.

The simple answer is that New York does not impose any regulation on the purchase of mortgages by FNMA. The incidence of this regulation does not fall upon FNMA, the federal instrumentality, but upon the contract relationship between mortgagor and mortgagee. When FNMA purchases a mortgage, it is a mortgage created under the laws of New York State, even though it may be insured by a federal agency like the Veterans Administration or the Federal Housing Authority. New York can determine the terms and conditions under which mortgages are taken. It can provide for filing fees, procedures upon foreclosure, as well as all other incidents that go with a state's control of its own affairs. When FNMA decides to buy a mortgage, the mortgage transferred is accompanied by the appurtenances of state law.

In the legislation involved in this case, there is no fee or levy on the transfer to FNMA. FNMA takes the mortgage as it is. Hence, after April 1, 1974, it simply buys a mortgage with a built-in obligation to pay 2% interest on escrow funds. Indeed, if by its purchase of the mortgage FNMA could nullify the state-imposed obligation upon the mortgagee to pay 2% on escrow funds, the right of the state to regulate its own affairs would be seriously impaired. To the extent that the new enactment alters the relationship between FNMA and its servicers, this imbalance can be corrected in future servicing contracts.[4] And the burden will be so collateral and min-

imal as not to affect substantially FNMA's purchasing policy on a national basis.

■ With respect to the pre-1970 mortgages, since these were New York mortgages, they were always governed by New York law. When FNMA bought them, it took them with all the indicia of New York law. We have seen in the companion case, Jamaica Savings Bank v. Lefkowitz, that there never was a firm rule of law in New York that protected the mortgagee from being required to pay interest on escrow funds. When FNMA brought these mortgages, it took the risk that one of the incidents of the existing mortgages was that the New York courts might some day construe the escrow payments to be held in trust or under some agency relationship which would deprive FNMA, as assignee of the mortgagee, of the power to keep the avails of the escrow payments. See Tierney v. Whitestone Savings & Loan Ass'n, (Queens Co. 1974) 77 Misc.2d 284, 353 N.Y.S.2d 104; Carpenter v. Suffolk Franklin Savings Bank (1973) —— Mass. ——, 291 N.E.2d 609. Were such a rule clearly established in New York case law, we would be dealing here, as in Anderson National Bank v. Luckett, *supra*, with a statute that merely removes from an institution the power to use funds in which it had no beneficial interest to begin with. Even though the trust issue remains unsettled in New York, it is clear that by this statute New York is not imposing any exaction upon FNMA, the federal instrumentality; it is simply recognizing a right in its mortgagors by a law applicable to all its mortgagees and their assignees.

Finally, we note that since the legal effect of this regulation falls directly upon the relationship of mortgagor to mortgagee, the burden it imposes on the federal instrumentality differs signifi-

4. A different issue is presented by the fact that a regulation promulgated by the state banking board makes FNMA liable for interest payments on mortgages executed after April 1, 1974 even though under servicing contracts entered into before that date, FNMA does not hold the escrow funds. For a discussion of this question, see part C, infra.

cantly from that inflicted on federal instrumentalities in earlier cases where state laws were struck down under the Supremacy Clause. In most of these cases, the state's exaction, generally in the form of a tax prohibited under federal law, fell directly on the activity of the federal instrumentality. See Mayo v. United States, *supra* (inspection of fertilizer distributed by federal agency and payment of fee); Federal Land Bank v. Bismarck (1941) 314 U.S. 595 (sales tax levied on purchase of lumber by Federal Land Bank); Pittman v. Homeowners' Loan Corp. (1939) 308 U. S. 21, 60 S.Ct. 15, 84 L.Ed. 11 (tax on HOLC's registration of mortgage taken to secure a loan); Federal Land Bank v. Crosland (1923) 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703 (tax on registration of mortgage by Federal Land Bank). However, where the burden has fallen upon private persons whose obligations were defined by contracts with the federal government, for example, state exactions have generally been upheld. Alabama v. King & Boozer (1941) 314 U. S. 1, 62 S.Ct. 43, 86 L.Ed. 3; cf. Kern-Limerick, Inc. v. Scurlock (1954) 347 U.S. 110, 122–23, 74 S.Ct. 403, 98 L.Ed. 546. Here, no tax or fee is exacted from FNMA; rather, there is state regulation of a legal relationship antecedent to federal involvement.

### C.

Plaintiff's last contention is that Section 10.2(c)(1) of the General Rules and Regulations of the New York State Banking Board violated the due process clause of the Fourteenth Amendment by depriving FNMA of an exemption conferred by Chapter 119.

Section 14–b(4)(iii) of the Banking Law exempts mortgage lending institutions from the payment of interest on escrow accounts where

"such accounts are maintained with a mortgage servicing company, neither affiliated with nor owned in whole or in part by the mortgage investing institution, under a written contract, entered into before the date this subdivision shall have become a law, which contract does not permit the mortgage investing institution to earn or receive a return from the investment of such accounts."

This exemption, however, was narrowed by Section 10.2(c)(1) of the General Rules and Regulations of the New York State Banking Board as follows:

"(c) The exemption under Section 14–b [subd. 4] (iii) [sic] of the Banking Law shall apply only if

(1) the date of the servicing contract *as well as* the mortgage in question predate April 1, 1974 . . ." (emphasis added)

FNMA contends that the effect of this regulation is to make it liable for interest payments on escrow funds paid under mortgages executed after April 1, 1974 when, under servicing contracts entered into before that date, FNMA has no control over and receives no return from the escrow funds.

Although FNMA has presented the issue in terms of a Due Process Clause violation, it seems clear that the appropriate question in the first instance is one of state law, that is, whether the State Banking Board correctly construed the statute in promulgating its regulation. Since we have rejected all of FNMA's federal constitutional arguments in this case, we decline to accept jurisdiction over this pendent state law question, and leave the parties to seek resolution of this last issue in the appropriate state forum.

### CONCLUSION

For the above stated reasons, plaintiff's application for a declaration that Chapter 119 is unconstitutional and an injunction enjoining enforcement of that provision is denied. Defendants' cross-motion to dismiss the complaint is granted.

So ordered.