**Pauline RUST, Appellant,**

v.

**Paul JOHNSON and Nora Johnson, Respondents.**

**CITY OF LOS ANGELES, Appellant,**

v.

**Paul JOHNSON, Nora Johnson, and the Secretary of Housing and Urban Development, Respondents.**

Nos. 77–2493, 77–2602.

United States Court of Appeals, Ninth Circuit.

May 10, 1979.

Rehearing Denied June 13, 1979.

L. Douglas Brown, Los Angeles, Cal., for Pauline Rust.

J. Mark Waxman, Asst. U. S. Atty., Burt Pines, City Atty., Los Angeles, Cal., Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., Patricia R. Harris, Sec. of Housing & Urban Dev., Washington, D. C., for respondents.

Before WALLACE and HUG, Circuit Judges, and TEMPLAR, District Judge.*

* Hon. George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

TEMPLAR, District Judge.

This case arises out of the foreclosure of a street improvement bond on a parcel of property located at 342 East 105th Street in Los Angeles, California. The foreclosure resulted in two parties claiming title to the property and in a dispute over the power of the City of Los Angeles to foreclose on property in which the United States holds an interest.

## FACTS

On August 14, 1971, the City of Los Angeles (City) assessed the property for street improvements in the amount of $158.36 and issued a bond to pay the assessment. At the time of the assessment, the Federal National Mortgage Association (FNMA) was in the process of foreclosing on a purchase money mortgage interest which it held in the property under a deed of trust. The deed of trust was insured by the Federal Housing Administration (FHA) and had been previously assigned to FNMA by the Imperial Bank.

FNMA completed its foreclosure and, on March 3, 1972, it conveyed the tract to the Secretary of Housing and Urban Development (HUD) in exchange for FHA insurance benefits. HUD owned the property from March 3, 1972 until September 21, 1973. During the period of its ownership, HUD did not make any payments on the street improvement bond. Consequently, the City commenced foreclosure and, on July 26, 1973, it sent notice to HUD and FNMA that the property would be sold for non-payment of installments due on the bond.

On September 21, 1973, HUD conveyed the tract to Paul and Nora Johnson. The Johnsons mortgaged the property in a deed of trust which they delivered to the California Mortgage Service. The deed secured a promissory note for the purchase price of the property and was insured by FHA. The California Mortgage Service assigned the deed of trust to FNMA on January 10, 1974 and FNMA held the deed until subsequent to the filing of this lawsuit when it assigned its rights to HUD.

The City posted a notice on the property and sent a second notice of sale to HUD and FNMA on February 28, 1974. Pursuant to the notice, the City completed foreclosure and sold the property to Pauline Rust on March 18, 1974. Rust received a treasurer's deed conveying the tract to her on March 31, 1975 and she later brought this action in state court to eject the Johnsons from the property.

The Johnsons filed a cross-complaint naming as cross-defendants Pauline Rust, the City of Los Angeles, and HUD. HUD had the case removed to federal district court where, after a trial on the merits, the court held that the action of the City to collect payment on the bond was an unconstitutional exercise of state power over property of the United States. Accordingly, judgment was entered quieting title in the Johnsons and declaring the sale to Rust invalid. Rust and the City appeal.

## DISCUSSION

### I.

Appellants challenge the district court's characterization of the non-judicial foreclosure as an "exercise of state power." Foreclosure on a street improvement bond is authorized by Section 6500 of the California Streets and Highways Code which provides:

"Whenever payment upon either the principal or the interest of any bond is not made to the bondholder when the coupon therefor is due, and the holder of the bond demands in writing that the [City] treasurer proceed to advertise and sell the lot or parcel of land described in the bond as being that upon which the assessment represented by the bond was levied, the treasurer shall proceed to advertise and sell the lot or parcel of land as provided in this chapter . . ."

In exercising the powers conferred by the statute, the City contends that the treasurer acts only as the special agent of the bondholder and that the City has no interest in either the bond or the payments. This argument ignores the purpose and op-

eration of the statutory scheme. Under the Code, the City is authorized to order improvements, make assessments, issue bonds, collect payment on the bonds, and to convey delinquent property after foreclosure is completed. Streets & Highways §§ 5240, 5343, 6422, 6500, 6555. These functions are performed pursuant to the taxing power of the state and in furtherance of the governmental purpose of providing for such improvements as the public interest or convenience may require. *Bryant v. Commissioner of Internal Revenue*, 111 F.2d 9, 13–14 (9th Cir. 1940); *City of Baldwin Park v. Stoskus*, 8 Cal.3d 563, 105 Cal.Rptr. 325, 503 P.2d 1333, 1335–36 (1972); *San Diego County v. Childs*, 217 Cal. 109, 17 P.2d 734, 738 (1938); Streets & Highways § 5101.

[1] The entry of the bondholder into the transaction does not make the City any less interested in seeing that its assessments are paid. As this lawsuit demonstrates, the City remains involved in the enforcement of the lien after a bond has been issued and it has exclusive responsibility under the Code for conducting non-judicial foreclosures against delinquent property. Streets & Highways §§ 6500–6555. Therefore, we hold that the City is significantly involved in the process of collecting payments on a street improvement bond and that the action taken in this case was an exercise of state power. *See generally Melara v. Kennedy*, 541 F.2d 802, 804–05 (9th Cir. 1976); *Adams v. Southern California First National Bank*, 492 F.2d 324, 330–31 (9th Cir. 1973), *cert. denied* 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974).

### II.

Appellants also challenge the district court's determination that the City exercised its power over "property of the United States." Appellants' contention rests in part on the assumption that "property of the United States" includes only property actually owned by the United States and does not include a mortgage interest held by a federal instrumentality. No basis in law exists for treating mortgage interests of federal instrumentalities differently from other property of the United States. *City of New Brunswick v. United States*, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1927); *United States v. Roessling*, 280 F.2d 933, 936 (5th Cir. 1960); *Branden v. Driver*, 293 F.Supp. 871, 872–73 (N.D.Cal.1968), affirmed 441 F.2d 1171 (9th Cir. 1971); *Clark Investment Co. v. United States*, 364 F.2d 7, 9 (9th Cir. 1966).

Nevertheless, appellants contend that FNMA should not be treated as a federal instrumentality. The reasons advanced for this contention are: (1) that FNMA is a privately owned corporation and (2) that FNMA engages in certain non-governmental functions. Responding to the argument that FNMA should be treated like a private lending institution, we are persuaded that such a contention is contrary to the intent expressed when the Act creating the present corporate structure of FNMA was enacted by Congress.

FNMA owes its existence to Congressional recognition of the importance of secondary credit in bringing about the National goal of " 'a decent home and a suitable living environment for every American family.' " U.S.Code Service at 2027, 2042 (1950); 12 U.S.C. § 1701t. Congress intended FNMA to operate as a reserve market for mortgage investors and to thereby facilitate the distribution of investment capital available for home mortgage financing. U.S.Code Service at 2041 (1950); 12 U.S.C. § 1716. To assist FNMA in the performance of its secondary market functions, Congress enacted laws granting FNMA special rights and privileges. For example, FNMA is exempt from having to qualify to do business in any state and it has immunity from state taxation (except for taxes on real estate). 12 U.S.C. §§ 1723a(a), 1723a(c)(2).

In 1968, Congress transferred ownership of FNMA to the private sector. 12 U.S.C. § 1718, as amended (Supp.). The change came about as a result of Congressional intent to reduce the impact of FNMA's operations on the budget of the United States. U.S.Code Service at 2041 (1950); U.S.Code Cong. & Admin.News at pp. 2943–

44 (1968). In making the change in FNMA's capital structure, Congress indicated in its legislative history that: "The new FNMA would be a 'Government-sponsored private corporation,' regulated by the Secretary and would have a status analogous to that of the Federal land banks and the Federal home loan banks." Cong. & Admin.News, *supra.*

■ We have been unable to find anything in the legislative history or in the statutes governing the operation of FNMA which supports the conclusion that Congress intended to strip FNMA of its status as a federal instrumentality. A survey of the cases involving the Federal land banks and the Federal home loan banks reveals that they are treated as federal instrumentalities engaged in the performance of governmental functions even though their stock may be privately owned. *Federal Land Bank v. Priddy,* 295 U.S. 229, 231, 55 S.Ct. 705, 79 L.Ed. 1408 (1935); *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 101–04, 62 S.Ct. 1, 86 L.Ed. 65 (1941); *Fahey v. O'Melveny & Myers,* 200 F.2d 420, 446, 454 (9th Cir. 1952), cert. denied sub nom. *Willhoit v. Fahey,* 345 U.S. 952, 73 S.Ct. 866, 97 L.Ed. 1374 (1953); 12 U.S.C. §§ 692, 1426. Congress apparently intends that FNMA should be treated in the same fashion. Cong. & Ad.News, *supra.* Further evidence of this intent appears from the fact that FNMA's officers and employees are subject to federal civil service and classification laws. 12 U.S.C. § 1723a(d)(2), as amended (Supp.). Moreover, FNMA continues to possess the privileges conferred under 12 U.S.C. § 1723a and it remains subject to the general regulatory power of the Secretary of Housing and Urban Development. 12 U.S.C. 1723a(h).

The cases cited in support of the argument that FNMA is not a federal instrumentality did not deal with the question presented in the case at bar. *See Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 358–60 (5th Cir. 1977); *Northrip v. Federal National Mortgage Association,* 527 F.2d 23, 30–32 (6th Cir. 1975). Rather they involved nonjudicial foreclosures under a "power of sale" clause in a deed of trust. Unlike the foreclosure in the instant case, foreclosures under a "power of sale" clause involve rights created by contract and the Courts have held that "power of sale" foreclosures do not involve state action. *Charmicor v. Deaner,* 572 F.2d 694, 695 (9th Cir. 1978); *Bryant v. Jefferson Federal Savings & Loan Association,* 166 U.S.App.D.C. 178, 180–81, 509 F.2d 511, 513–16 (1974). Here, we are not concerned with whether FNMA is engaged in state or federal action when it institutes foreclosure under a "power of sale" clause in a deed. Since this was the only issue before the Courts in the *Roberts* and *Northrip* cases, *supra,* we do not believe that their decisions lend authoritative support to the position taken by appellants on this appeal.

We note with approval the decision of the district court in *Federal National Mortgage Association v. Lefkowitz,* 390 F.Supp. 1364, 1368 (S.D.N.Y.1975) which held that FNMA is a federal instrumentality and that the effect of a state statute upon FNMA's property may be considered to determine the validity of the statute under the supremacy clause of the United States Constitution. And we hold that an exercise of state power over a mortgage interest held by FNMA constitutes an exercise of state power over property of the United States.

### III.

The third and, in our opinion, the decisive issue in this lawsuit concerns the constitutionality of the City's foreclosure proceeding. What we are dealing with is in substance a supremacy clause question and we must decide whether the improvement lien could be enforced without first excluding the federal interest.

■ The rights conferred upon a purchaser by a treasurer's deed are set out in Section 6555 of the Streets and Highways Code which provides in pertinent part as follows:

"The deed of the treasurer, when duly acknowledged or proved, is primary evidence of the regularity of all proceedings

theretofore had, and conveys to the grantee absolute title to the lands described therein, as of the date of the expiration of the period for redemption, free of all encumbrances, except: . ."

On the dates of sale and conveyance to appellant Rust, FNMA held an assignment of a purchase money mortgage interest in the property. The City made no attempt to protect this interest when it sold and conveyed the tract to Rust and no allegation is made that FNMA's interest would be protected under any of the exceptions listed in Section 6555. By taking the position that it can convey absolute title in derogation of the federal interest, the City in effect asks this Court to extinguish FNMA's interest in the property. We believe that Congress did not intend for the City to have this power and that, in the absence of Congressional intent to the contrary, the action of the City cannot be sustained.

Our view of the situation is well expressed in the case of *City of New Brunswick v. United States, supra*, 276 U.S. at 555-56, 48 S.Ct. 371. There, land owned by an instrumentality of the United States was sold to purchasers who executed mortgages to the instrumentality to secure the balance of the purchase price. The city of New Brunswick assessed the property for taxes in the year following the sale and, when the taxes went unpaid, it instituted proceedings to sell the lots to satisfy its lien. On appeal from an order enjoining the sale, the Supreme Court held that the purchasers' interest could be subjected to sale but the interest of the instrumentality could not. In so holding, the Court recognized the paramount interest of the United States in the property and ordered the City to protect that interest by expressly excluding it from the tax sale.

The principle enunciated in the *New Brunswick* decision has found general application in other cases involving similar disputes over the state's authority to enforce its lien against a federal interest in property. *Roessling, supra*, 280 F.2d at 936; *S. R. A., Inc. v. Minnesota*, 327 U.S. 558, 66 S.Ct.

749, 90 L.Ed. 851 (1946); *Van Brocklin v. Tennessee*, 117 U.S. 151, 179, 6 S.Ct. 670, 29 L.Ed. 845 (1885). We agree with the reasoning expressed in those cases and with the statement in *United States v. General Douglas MacArthur Senior Village, Inc.*, 470 F.2d 675, 680 (2d Cir. 1972), *cert. denied sub nom. County of Nassau v. United States*, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973) that "local governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien."

State legislation must yield under the supremacy clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs. *Public Utility District of Pend Oreille v. United States*, 417 F.2d 200, 202 (9th Cir. 1969); *City of Los Angeles v. United States*, 355 F.Supp. 461, 465 (C.D.Cal.1972). In this manner, the supremacy clause seeks to avoid the introduction of the disparity, confusion, and conflict which would follow if the Government's general authority is subject to local controls. *United States v. Allegheny County*, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

To sustain the action of the City in this case, we would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act. While we recognize that the City was engaging in a valid state function, this does not render its conduct constitutional or allow it to sell property without protecting the federal interest. *Perez v. Campbell*, 402 U.S. 637, 648–49, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *S. R. A., Inc., supra*, 327 U.S. at 565–66, 66 S.Ct. 749. Accordingly, we hold that the foreclosure conducted by the City was invalid under the supremacy clause of the United States Constitution.

In an attempt to distinguish some of the decisions upon which we have based our

holding, appellants contend those decisions involved federal interests created before the state and local liens attached and that the same protection does not apply where the federal interest arises subsequent to the attachment of the local lien. In support of this argument, appellants refer the Court to *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960) and *United States v. Cless*, 254 F.2d 590 (3rd Cir. 1958).

Appellants' contention confuses the validity and priority of the lien with the real issue in this lawsuit. We are not concerned with the authority of the City to make the assessment or with the priority under state law of the street improvement lien. The district court did not make any findings or conclusions on these issues. What we have decided is that under federal law the improvement lien cannot be enforced without protecting the federal interest.

The *Brosnan* and *Cless* decisions, *supra*, do not support or require a different conclusion from the one reached here. They involved a preliminary determination that state law should be the federal rule of decision. Under the state law applied in the *Brosnan* and *Cless* decisions, the interest held by the federal government could be subordinated and/or extinguished by non-judicial foreclosure proceedings. In a recent case involving the lending functions of the Small Business Administration (SBA) and the Farmers Home Administration (FmHA), the Supreme Court followed the same approach and held that "the prudent course is to adopt the ready-made body of state law as the federal rule of decision until Congress strikes a different accommodation." *United States v. Kimbell Foods, Inc.*, ⸺ U.S. ⸺, ⸺, 99 S.Ct. 1448, 1453, 59 L.Ed.2d 711 (1979). We note, however, that Congress has indicated an intent to have state law govern interests held by the SBA and FmHA. *See* 15 U.S.C. § 646 and 7 U.S.C. § 1981(d), as amended (Supp.). Moreover, the SBA and FmHA operate under a set of rules and regulations which allow them to individually tailor their loans. *See Kimbell, supra; United States v. Yazell*, 382 U.S. 341, 345–48, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *United States v. Cali-*

*fornia-Oregon Plywood, Inc.*, 527 F.2d 687 (9th Cir. 1975); *Ault v. Harris*, 317 F.Supp. 373 (D.Alaska 1968), affirmed 432 F.2d 441 (9th Cir. 1970).

FNMA, on the other hand, has little or no contact with its mortgagors and it does not individually negotiate the mortgage contracts it receives. As a secondary market facility, FNMA buys mortgages which are of such quality, type and class as those which meet the general purchase standards of private institutional investors. *See* 12 U.S.C. § 1719(a)(1), as amended (Supp.). Thus, it appears that FNMA operates on an entirely different plane and under a more elastic set of regulations than either the SBA or FmHA. To subject it to the same rules which govern the lending programs of the SBA and FmHA would either limit the types of mortgages which FNMA can purchase or require the corporation to participate in the negotiations between its assignor and the mortgagor. This would impair the liquidity in the home mortgage market which Congress hoped to achieve by creating FNMA and, by restricting the mortgages available to FNMA, it would be contrary to the express intent of Congress which has been to expand rather than to limit the corporation's market. 12 U.S.C. § 1716(a); Code Service, *supra*, at 2042; Cong. & Admin.News, *supra*, at p. 2944 (1968).

This is not a case where Congress has allowed the federal interest to be subject to state law. *Compare* 15 U.S.C. § 646 and 7 U.S.C. § 1981(d), as amended (Supp.). Nor is it a case where the federal instrumentality can easily protect itself by including a clause in the mortgage contract stating that it is exempt from state law because FNMA is not a party to the original contract. Consequently, we believe that state law should not be applied as the federal rule of decision in cases involving the lending functions of FNMA and that existing federal law should control. *See generally United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380, 383 (9th Cir. 1959), cert. denied 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959); *Clark Investment, supra*, 364 F.2d at 9; *United States v. Stadium Apartments,*

*Inc.,* 425 F.2d 358, 364–65 (9th Cir. 1970); *Branden, supra,* 293 F.Supp. at 873; *United States v. Forest Glen Senior Residence,* 278 F.Supp. 343, 344 (D.Or.1967); *cf. United States v. MacKenzie,* 510 F.2d 39 (9th Cir. 1975). Under federal law, as it is set forth in this opinion, the action of the City to collect payment on the bond without protecting the federal interest was an unconstitutional exercise of state power over property of the United States. Therefore, the sale to appellant Rust cannot be upheld.

### IV.

A number of other issues are argued by the parties. Because we reach the conclusion that the sale was invalid, consideration of these other issues is unnecessary to our decision in this case and we express no opinion on the treatment they received in the court below. *Immigration & Naturalization Service v. Bagamasbad,* 429 U.S. 24, 25, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976).

The judgment of the district court is AFFIRMED.