**UNITED STATES of America and United States Postal Service, Plaintiffs-Appellees,**

v.

**CITY OF PITTSBURG, CALIFORNIA, Defendant-Appellant,**

and

**National Association of Letter Carriers, Intervenor-Appellant.**

**Nos. 79–4368, 79–4611.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1981.

Decided Nov. 16, 1981.

18. Haw.Rev.Stat., § 388–6.

19. Haw.Rev.Stat., § 388–11.

Nancy T. Forden, C., U. S. Postal Service, Washington, D. C., argued, for U. S. and Post Office; Leonard Schaitman, Washington, D. C., on brief.

Keith E. Secular, Cohen, Weiss & Simon, New York City, for National Asso. of Letter Carriers, intervenor.

Before TANG and CANBY, Circuit Judges and D. WILLIAMS,* District Judge.

TANG, Circuit Judge:

This appeal decides the validity of a municipal trespass ordinance that explicitly requires United States Postal letter carriers to obtain express consent from residents before crossing their lawns in the course of mail delivery. The United States District Court for the Northern District of California, Schwarzer, J., held the ordinance unconstitutional under the Supremacy Clause. 467 F.Supp. 1080. We affirm.

### Background

On November 13, 1978, the City of Pittsburg, California added the following provision to its criminal trespass ordinance:

> No United States Postal Letter Carrier shall be allowed to cross the lawns of private property owners, lessee, or persons in charge thereof, without the prior express consent of the owner, lessee, or other person in charge thereof.

The United States and the United States Postal Service brought suit December 21, 1978, seeking declaratory and injunctive relief against enforcement of the amended provision of the ordinance. They argued that it interposed "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as expressed in the Postal Reorganization Act of 1971 and is in violation of Article I, Section 8, Clause 7 [the Postal Powers Clause] of the Constitution of the United States." The National Association of Letter Carriers (NALC), the exclusive collective bargaining agent for all non-supervisory postal employees in the city, was permitted to intervene as a defendant February 20, 1979. On April 2, 1979, the district court granted summary judgment to the United States and the Postal Service declaring the ordinance invalid under the Supremacy Clause. The City of Pittsburg and NALC (hereinafter referred to collectively as "the City") appealed.

### I.

### Preemption

The City argues that the Postal Reorganization Act, 39 U.S.C. § 101 et seq., does not preempt the ordinance because Congressional intent to override local trespass

---

* Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

law is lacking. According to the City, in order for the ordinance to be preempted, there must also be an actual and necessary conflict with a federal statute that prevents the accomplishment of the federal purpose. Because the ordinance does not *prevent* the delivery of mail, the city argues, it does not present a direct and necessary conflict with Congressional purposes.

■ The City's emphasis on Congressional intent is misplaced. As the district court properly determined, Congress need not have intended specifically to override local trespass law for us to hold the application of the ordinance to the Postal Service invalid. It is undisputed that each government has acted in an area of its acknowledged power: The City in the area of local property rights and Congress in the area of postal service. The issue here is which government shall prevail if the otherwise legitimate exercise of authority of each results in a conflict. Local law will be found to be preempted by federal law whenever the "challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). *See also Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979) (local government cannot override federal interest even though local government was engaged in valid state function). Thus, we must determine whether the Pittsburg ordinance obstructs the execution of Congressional objectives in the area of mail delivery.

The conflict here between federal and local law is clear. The local ordinance prohibits postal carriers from crossing lawns unless they first obtain the owner's express consent. Federal law, on the other hand, authorizes postal carriers to cross lawns unless the owner objects. Postal regulations provide that "[c]arriers may cross lawns while making deliveries if patrons do not object and there are no particular hazards to the carrier."[1]

■ It is also clear that the local ordinance frustrates a major Congressional objective that the postal regulation seeks to implement. The federal regulation is designed to promote the efficiency of mail delivery by permitting postal carriers to take short-cuts across lawns.[2] The regulation's purpose and effect is consonant with the Congressional mandate to the Postal Service to provide efficient mail delivery service.[3] The local ordinance frustrates

---

1. A regional manual of the Post Office Department (the predecessor of the Postal Service) contained the regulation as early as 1962. The regulation was subsequently reissued and is now incorporated by reference in the regulations of the Postal Service. *See* 39 C.F.R. § 211.2(a)(3) (1980), which provides that "Headquarters Manual, Regional Instructions, handbooks, delegations of authority, and other regulatory issuances and directives of the Postal Service or the former Post Office Department" shall be considered regulations of the Postal Service.

2. The Postal Service was well within its authority in promulgating the regulation. 39 U.S.C. § 401(2) authorizes the Postal Service "to adopt, amend, and repeal such rules and regulations as it deems necessary to accomplish the objectives of this title." A principal aim of the Postal Reorganization Act was to promote postal efficiency. *See* note 3, *infra*. It was therefore permissible for the Postal Service to adopt the regulation as a necessary device to accomplish this aim.

3. Speed, efficiency, and economy were the hallmarks of the Postal Reorganization Act. *See, e. g.* 39 U.S.C. § 403(b)(1) (1976) (Postal Service must maintain efficient system of delivery); 39 U.S.C. § 1001(e) (1976) (Postal Service has the right "to maintain efficiency of operations entrusted to it"); 39 U.S.C. § 3661(a) (1976) ("Postal Service shall develop and promote adequate and efficient postal service"); 39 U.S.C. § 101(e) (1976) ("Postal Service shall give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail").

   *See also* 18 U.S.C. § 1701 (1976) (criminal offense to delay the mail); H.R.Rep. No. 91–1104, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 3649, 3653 ("Top management must be given authority, consistent with its responsibilities, to provide an efficient and economical postal system").

postal efficiency by forcing the Postal Service either to stop using short-cuts across lawns or to undertake the nightmarish administrative burden of obtaining express consent from every Pittsburg property owner.[4] It is therefore an unconstitutional "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Our conclusion that the City's ordinance cannot be applied to federal postal carriers also follows from *Johnson v. Maryland*, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920). *Johnson* held unconstitutional the application of a Maryland driver's license statute to postal employees. The court ruled that where a postal worker is performing duties pursuant to federal law, a state cannot impose requirements that interfere with the performance of those duties. *Id.* at 56–57, 41 S.Ct. at 16. Like the application of the statute in *Johnson*, the Pittsburg ordinance interferes with postal carriers' federal duty to deliver the mail efficiently and is therefore unconstitutional.[5]

## II.

### The Tenth Amendment and the *Usery* Decision

The City argues that even if the Postal Reorganization Act preempts the ordinance, the Act as applied violates the Tenth Amendment as interpreted in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The district court found the City's Tenth

Amendment argument to be meritless. We agree. *Usery* applies only when federal activity encroaches upon integral governmental functions of the states or their political subdivisions. 426 U.S. at 855, 96 S.Ct. at 2475. Here, no integral governmental function of the City of Pittsburg is threatened by allowing postal carriers to cross lawns in the absence of customer objection. *Usery*, therefore, does not apply here.

## III.

### The Fifth Amendment

The City also argues that the Postal Service practice of permitting letter carriers to cross lawns without express owner consent is a taking without just compensation in violation of the Fifth Amendment. This argument is meritless.

First, the City of Pittsburg does not have standing to raise the Fifth Amendment issue. It argues that it should be allowed to assert the rights of the local residents since it would be difficult for local residents to do so. The Supreme Court has established that even where a party is allowed to assert the rights of others, he "still must allege a distinct and palpable injury to himself" to possess standing. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–1608, 60 L.Ed.2d 66 (1979). Here, the City of Pittsburg can assert no right of its own that is violated as a result of the postal carriers' lawn crossing. Nor may the City of Pittsburg base

---

**4.** The record indicates that the ordinance has already reduced postal efficiency. Prior to the enactment of the Pittsburg ordinance, Pittsburg letter carriers were required to cross all safe lawns unless the postal customer had objected. When the ordinance took effect, the Pittsburg Postmaster instructed letter carriers not to cross lawns in Pittsburg. As a result, mail delivery took longer and was more expensive since time-and-one-half for overtime was paid for the extra time required.

**5.** The issue raised by the Pittsburg ordinance differs significantly from the issue raised in *United States v. City of St. Louis, Branch 343*, 597 F.2d 121 (8th Cir. 1979). There, the City of

St. Louis passed an ordinance that allowed lawn crossings by letter carriers if the "express or implied consent of the owner or his agent" was present. *Id.* at 122. As the Sixth Circuit noted, the federal regulation and the ordinance had the same effect: "In either case, letter carriers may cross lawns in the absence of customer objection (withdrawal of implied consent); thus, the effect of the regulation and of the ordinance is identical." *Id.* at 124 (footnote omitted).

In contrast, the Pittsburg ordinance requires the Postal Service to obtain the "express consent" of the postal customer before a letter carrier may cross a lawn.

standing upon a *parens patriae* theory. Although cities may "sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants," only the states and the federal government may sue as *parens patriae. In Re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir.), *cert. denied sub nom. Morgan v. Automobile Manufacturers Ass'n, Inc.*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973).

■ Second, even if the City had standing to raise the taking issue, the lawn-crossing policy's effect upon existing property rights is simply too miniscule to constitute a taking. The regulation does not significantly dilute or affect property rights or interests. It instead leaves property owners in full control of their property. The regulation and the record indicate that if a postal customer objects in any manner to having his lawn crossed, postal carriers will not cross the lawn. The regulation therefore does not effect a taking. *See United States v. City of St. Louis, Branch 343, Nat. Ass'n. of Letter Carriers*, 597 F.2d 121, 125 (8th Cir. 1979).

AFFIRMED.