**CAMBRIDGE CAPITAL CORP.,** a Florida Corporation, and Boston Investors Group, Inc. a Florida Corporation, Plaintiffs,

v.

**HALCON ENTERPRISES, INC.,** a Florida Corporation; FDIC successor in interest for Creditbank, a Florida Corporation; The Orion Insurance Company; and All Other Parties Claiming Or Who Might Claim An Interest in the Subject Property, Defendants.

No. 92–424–CIV.

United States District Court,
S.D. Florida.

Oct. 21, 1993.

Damodar S. Airan, Miami, FL, for plaintiffs.

Brian K. Goodkind, Wesley R. Parsons, Adorno & Zeder, P.A., Miami, FL and L. Bruce Swiren, Orlando, FL, for FDIC.

Odalys Ibrahim, Miami, FL, for Halcon Enterprises, Inc.

### ORDER AND MEMORANDUM OPINION

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Federal Deposit Insurance Corporation's, in its Corporate Capacity ("FDIC–Corporate"), Motion for Summary Final Judgment (D.E. 26), filed August 11, 1993. For the reasons stated in the memorandum opinion below, the motion for summary final judgment is granted.

## I. BACKGROUND

The Federal Deposit Insurance Corporation is a corporation organized and existing pursuant to an act of Congress of the United States known as the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.*, with its principal place of business located in Washington, D.C. Prior to and including January 26, 1990, CreditBank was a banking institution organized and existing under the laws of Florida with its principal place of business in Dade County, Florida. On January 26, 1990, the Office of the Comptroller of the Currency found CreditBank to be insolvent and appointed the Federal Deposit Insurance Corporation as Receiver for CreditBank pursuant to 12 U.S.C. § 1821 *et seq.* On that same date, the appointment was accepted, and FDIC–Corporate, as authorized by 12 U.S.C. § 1823(c), purchased by contract of sale and by assignment, certain assets of CreditBank from the Federal Deposit Insurance Corporation as Receiver, including the mortgage loan that is the subject of this action.

On January 24, 1992, Plaintiffs filed this action to quiet title to real property located in Dade County, Florida in the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida. FDIC–Corporate removed this action to this Court on February 21, 1992. The property is a condominium unit described as: "Kendall Falls Condo, Unit 2, Undiv ⅛ int in common elements, Off Rec 13507–3163." In their Complaint, Plaintiffs allege they acquired legal title to the property in a public tax sale through issuance of a tax deed on January 10, 1992.[1] CreditBank had a first mortgage on the property, which FDIC–Corporate now owns and holds and has held since its purchase of the mortgage two years prior to the tax sale.[2] Plaintiffs allege FDIC–Corporate's first mortgage was extinguished in the public sale and by issuance of the tax deed.

On May 13, 1992, FDIC–Corporate filed a counterclaim against Plaintiffs and a crossclaim against Halcon and Defendant, Orion Insurance Company ("Orion"), seeking a declaration that, pursuant to special rights granted to FDIC–Corporate by Congress in 12 U.S.C. § 1825(b)(2), FDIC–Corporate's interest as a mortgagee was not extinguished by the tax sale and issuance of the tax deed and its mortgage survived these events. FDIC–Corporate pleaded two counts in its Counterclaim and Crossclaim seeking, specifically, a declaration that its first mortgage interest survived this tax sale and still encumbers the property, and, generally, a declaration that 12 U.S.C. § 1825(b)(2) mandates that any property interest of the Federal Deposit Insurance Corporation as Receiver (or FDIC–Corporate pursuant to 12 U.S.C. § 1823(d)(3)(A)) survives a state tax sale, unless the Federal Deposit Insurance Corporation has consented to the extinguishment of such interest. The Clerk entered a default against Plaintiffs on FDIC–Corporate's Counterclaim on July 13, 1992, and against Orion on FDIC–Corporate's Crossclaim on September 22, 1992.

On October 1, 1992, Halcon filed for bankruptcy relief under Chapter 7 of Title 11, United States Code. In response thereto, on November 30, 1992, this Court stayed this action and placed it in its civil suspense file. On May 4, 1993, the United States Bankruptcy Court for the Southern District of Florida lifted the automatic stay to allow this action to proceed as to all parties except Halcon. On August 19, 1993, the Court removed this case from its suspense docket and lifted its stay.

On October 9, 1992, FDIC–Corporate moved for the entry of default final judgment on its Counterclaim against Plaintiffs and on

---

1. Tax certificates on the property were issued for the years 1988, 1989, and 1990, for assessed but unpaid taxes in those years, in the respective amounts of $244.57, $1,257.66, and $1,183.20. The tax sale as to the certificates took place on January 9, 1992, and the highest bidders were Tashvit Investment Inc. and Cambridge [sic] Investment Corp., which paid $3,701.37 for the property. Tashvit Investment Inc. assigned its rights to the property to Boston Investors Group, Inc. The tax deed to the property was issued to the highest bidders on January 10, 1992.

2. FDIC–Corporate is the owner and holder of that certain Mortgage and Security Agreement from Halcon Enterprises, Inc. to CreditBank dated December 22, 1987, and recorded in Book 13518, Page 403, Official Records of Dade County, Florida, which is a first mortgage encumbering the property.

its Crossclaim against Orion. The Court entered a default final judgment thereon on September 28, 1993.

## II. STANDARD OF REVIEW

A district court must grant summary judgment if it appears through pleadings, depositions, admissions, and affidavits, considered in the light most favorable to the opposing party, that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Real Estate Financing v. Resolution Trust Corporation*, 950 F.2d 1540, 1542 (11th Cir.1992); *McGahee v. Northern Propane Gas Co.*, 858 F.2d 1487, 1493 (11th Cir.1988); *Cubbage v. Averett*, 626 F.2d 1307, 1308 (5th Cir.1980).

## III. DISCUSSION

### A. *SALES OF REAL PROPERTY FOR UNPAID TAXES UNDER FLORIDA LAW.*

The sale of property for unpaid taxes is governed by Chapter 197, Florida Statutes (1991). Assessed but unpaid property taxes on a parcel of property become a first priority lien on such property on January 1 of the year they are levied. Section 197.122(1), Florida Statutes (1991). The Clerk then issues a Tax Sale Certificate for all parcels on which taxes are unpaid as of June 1 of the following year, which certificates are auctioned to the highest bidder, who pays the taxes on the property. Section 197.432. After the Tax Sale Certificate has been issued, it may be redeemed through payment of the certificate. Section 197.472. After two years have passed since April 1 of the year of the purchase of the Tax Sale Certificate, the owner of the certificate may apply to the County Clerk to sell the property, Section 197.502–.542, the proceeds therefrom going to the owner of the certificate, Section 197.582.

The sale of the property and the issuance of a tax deed in accordance with the above procedure purportedly extinguish any "right, interest, restriction, or other covenant" other than a covenant running with land or an interest held by a municipal or county government. Section 197.552. A tax deed is "prima facie evidence of the regularity of all proceedings from the valuation of the lands to the issuance of the deed, inclusive." *Id.*

### B. *THE EFFECT OF 12 U.S.C. § 1825(B)(2) ON TAX SALES.*

Pursuant to Section 1825(b)(2) of Title 12, the Federal Deposit Insurance Corporation, when acting in its capacity as receiver, is exempted from the extinguishment of its property interests through sale, foreclosure, or levy. Section 1825(b) provides in full:

(b) Other exemptions

When acting as a receiver, the following provisions shall apply with respect to the [Federal Deposit Insurance Corporation]:

(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by and State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

(3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

This subsection shall not apply with respect to any tax imposed (or other amount

arising) under Title 26.[3]

The court recently held in *GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc.*, 998 F.2d 853, 855–56 (10th Cir.1993), that Section 1825(b) operates in favor of FDIC–Corporate by virtue of 12 U.S.C. § 1823(d)(3)(A). This statute provides:

> With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the powers, rights, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.

The Federal Deposit Insurance Corporation, acting in both its corporate and receivership capacities (the "FDIC"), has issued a Tax Policy Statement and Legal Memorandum[4] thereon which sets forth a policy of recognizing claims for any property taxes secured by a valid lien with priority over a lien interest held by the FDIC. The FDIC Tax Policy Statement also states, however, that while a lien for taxes may attach, no lien held by the FDIC can be eliminated by foreclosure (to which the analogy in this case is the tax sale and this subsequent quiet title action) without the FDIC's consent. The policy against involuntary foreclosure or sale reflects both the express terms of Section 1825(b)(2), and the established federal common law that a real estate tax lien cannot be foreclosed in derogation of a mortgage interest held by a federal entity where immunity has not been waived.

Section 1825(b)(2) prevents FDIC–Corporate's mortgage from being extinguished by a tax sale under Chapter 197, Florida Statutes, since, in conjunction with Section 1823(d)(3)(A), it unambiguously provides that no property of FDIC–Corporate may be extinguished by sale, levy, or foreclosure. This conclusion is compelled by the language of Section 1825(b)(2), is required as a result of recent decisions of other courts, and is further supported by the statute's legislative history.

### 1. *The Express Language of Section 1825(b)(2).*

Section 1825(b)(2) could not be more specific in prohibiting the extinguishment of an FDIC lien interest because it provides that no "property" of the FDIC shall be subject to "levy," "foreclosure," or "sale" without the "consent of the FDIC." This Court need look no further than the statute itself to determine that Congress has expressed its intent that no property of the FDIC—fee or lien—be subject to foreclosure without the FDIC's consent.[5] The meaning of "property" is apparent. Section 1825(b)(2) does not explicitly use the term "fee interests" or "mortgage interests" or "lien interests" because by using the broad term "property" it encompasses all forms of interests and reference to a specific type of interest is unnecessary. The definition of "property" in this case is governed by federal law, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838, 841–42 (1943), and, as discussed above, it has been settled federal law for sixty-five years that in this context "property" embraces both fee and lien interests.[6]

---

3. Subsection (b) of Section 1825 was adopted by Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, which became effective on August 9, 1989. FIRREA was enacted in response to the national crisis involving failed financial institutions. Its purpose was, among other things, to strengthen enforcement powers of federal regulators of depository institutions. FIRREA § 101, *reprinted in* 1989 U.S.C.C.A.N. (103 Stat.) 187.

4. The FDIC's Tax Policy Statement was formally adopted by the FDIC's Board of Directors, and is published at 1 *FDIC, Law, Regulations, and Related Acts (FDIC)* 5331. The Legal Memorandum which accompanied the Tax Policy Statement, and which the FDIC's Board adopted, is published at Fed.Banking L.Rep. (CCH) ¶ 81,426.

The 1991 Tax Policy Statement replaced an Interim Tax Policy Statement that had been issued on July 12, 1990, almost one year earlier. The earlier policy statement adopted exactly the same interpretation of Section 1825(b)(2) set forth in the 1991 Tax Policy Statement.

5. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694, 702–03 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

6. *See Clallam County v. United States*, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328 (1923); *New Brunswick v. United States*, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928); *United States v.*

Next, Section 1825(b)(2) provides such property shall not be "subject to" "levy", "sale", or "foreclosure." In this case, the operative act is the tax "sale", and this subsequent quiet title action is the equivalent of a levy or foreclosure. An ordinary meaning of "subject to" is "governed, affected or limited by." *Black's Law Dictionary* 1425 (6th ed. 1990).[7] Giving the words "subject to" this ordinary meaning,[8] Section 1825(b)(2) means that no lien interest of the FDIC shall be "governed, affected or limited by" foreclosure without the FDIC's consent. Because the extinguishment of FDIC–Corporate's lien would result precisely because under Florida law FDIC–Corporate's interest is "governed, affected or limited by" the tax sale, Section 1825(b)(2) expressly precludes the relief sought by the Plaintiffs.[9] In other words, the statutory language is not limited only to foreclosures "directly" against the FDIC's property, but encompasses any sale, levy, or foreclosure that affects or limits the FDIC's property as well.

Finally, FDIC–Corporate has *not* consented. Accordingly, under Section 1825(b)(2), FDIC–Corporate's mortgage "shall not be subject to" the tax sale. Given the long history of protecting federal lien interests, the language of Section 1825(b)(2) leaves no doubt that Congress intended no property interest of the FDIC, whether fee or lien, to be subject to foreclosure. In addition to this clear statutory prescription, the FDIC itself has adopted a policy statement, which should be accorded deference by the courts, that establishes that its mortgage is not extinguished by the tax sale.

The language of Section 1825(b)(2) should be read in light of *New Brunswick v. United States*, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928), wherein the Supreme Court established sixty-five years ago that a mortgage interest held by a federally created entity immune from state taxation is "property" that cannot be adversely affected by foreclosure of a local taxing authority's lien. In *New Brunswick*, the United States Housing Corporation sold a parcel of real estate under an agreement providing for future payment which gave the Housing Corporation the equivalent of a mortgage to secure payment. Real property taxes went unpaid for several years, and the City of New Brunswick sought to enforce collection by selling the land. The Supreme Court held that because the Housing Corporation was a federal instrumentality, any sale of the property must protect the federal mortgage interest:

> But it is plain, under the doctrine of [*Clallam County v. United States*, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328 (1923) ], that the City is without authority to enforce the collection of the taxes thus assessed against the purchasers by a sale of the interest in the lots which was retained and held by the Corporation as security for the

*Roessling*, 280 F.2d 933, 936 (5th Cir.1960); *Rust v. Johnson*, 597 F.2d 174 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979); *United States v. General Douglas MacArthur Senior Village, Inc.*, 470 F.2d 675, 680 (2d Cir.1972), *cert. denied sub nom. County of Nassau v. United States*, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973); *United States v. County of Richland*, 500 F.Supp. 312, 316–317 (D.S.C.1980); *United States v. Emergency Land Fund, Inc.*, 569 F.Supp. 62, 65 (S.D.Miss.1983), *aff'd*, 738 F.2d 434 (5th Cir.1984).

**7.** *See also Bradshaw v. Lower Colorado River Authority*, 573 S.W.2d 880, 883 (Tex.Ct.App.1978); *Bulger v. McCourt*, 138 N.W.2d 18, 22 (Neb. 1965); *Lydig Construction, Inc. v. Rainier National Bank*, 40 Wash.App. 141, 697 P.2d 1019, 1022 (1985); *Flower v. Town of Billerica*, 324 Mass. 519, 87 N.E.2d 189, 191 (1949); *Anderson v. Southwest Savings & Loan Ass'n*, 117 Ariz. 246, 571 P.2d 1042, 1044 (1977); *Amoco Production Co. v. United States*, 17 Cl.Ct. 590, 593 (1989); *Cassidy v. Ellerhorst*, 20 Ohio App. 8, 153 N.E.

118 (1923); *State Revenue Comm'n v. Columbus Bank & Trust Co.*, 50 Ga.App. 486, 178 S.E. 463, 464 (1935).

**8.** As the Supreme Court recently confirmed, when seeking the legislative intent embodied in statutory language, "we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *INS v. Elias–Zacarias*, —— U.S. ——, ——, 112 S.Ct. 812, 816, 117 L.Ed.2d 38, 44 (1992); *accord Ardestani v. INS*, —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496, 505 (1991).

**9.** *See New Brunswick v. United States*, 276 U.S. at 556, 48 S.Ct. at 372, 72 L.Ed. at 698 (city's sale of property amounted to making the federal corporation's property interest subject to state taxation, which is prohibited under the Supremacy Clause).

payment of the unpaid purchase money.... That interest, being held by the Corporation for the benefit of the United States, is paramount to the taxing power of the State and cannot be subjected by the City to sale for taxes.

We conclude that, although the City should not be enjoined from collecting the taxes assessed to the purchasers by sales of their interests in the lots, as equitable owners, it should be enjoined from selling the lots for the collection of such taxes unless all rights, liens, and interests in the lots, retained and held by the Corporation as security for the unpaid purchase moneys, are expressly excluded from such sales, and they are made, by express terms, subject to all such prior rights, liens and interests. This, we think, will meet the equities of the case as between the Corporation and the City, and fully protect the paramount right of the United States.

276 U.S. at 556, 48 S.Ct. at 372–73, 72 L.Ed. at 698.

*New Brunswick* thus held that although a local taxing authority may foreclose against property in which a federally created entity immune from such taxation holds a mortgage interest, in so doing the taxing authority must not adversely affect the federal mortgage interest. The underlying premise of that holding is that foreclosure against such property subjects the property of the federal entity to foreclosure.

More recently, the Ninth Circuit expressly stated the *New Brunswick* decision's premise in *Rust v. Johnson*, 597 F.2d 174 (9th Cir.), *cert. denied*, 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979). In that case, the City of Los Angeles attempted to foreclose a special assessment tax lien against property in which the Federal National Mortgage Association ("FNMA") held a security interest. In response to FNMA's argument that foreclosure could not take place in a manner that impaired its mortgage lien, the City contended that "property" ... "includes only property actually owned ... and does not include a

mortgage interest." *Id.* at 177. Relying upon *New Brunswick*, the Ninth Circuit rejected the argument, stating that "[n]o basis in law exists for treating mortgage interests of federal instrumentalities differently from other property...." 597 F.2d at 174.[10]

When FIRREA added Section 1825(b)(2) to the Federal Deposit Insurance Act in 1989, therefore, it had been established for more than sixty years that federal lien interests must be protected when local tax liens are foreclosed. When a court interprets a statute, "[i]t is not lightly to be assumed that Congress intended to depart from a long established policy." *United States v. Wilson,* — U.S. —, —, 112 S.Ct. 1351, 1355, 117 L.Ed.2d 593, 600 (1992) (*quoting Robertson v. Railroad Labor Board,* 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119 (1925)). Here, that principle applies with particular force because Section 1825(b)(2) adopts the same language—no property of the receiver shall be "subject to" foreclosure—used by the Supreme Court when it established in *New Brunswick* that a federal lien interest "cannot be subjected ... to sale for taxes." 276 U.S. at 556, 48 S.Ct. at 373, 72 L.Ed. at 698. Given the historical background against which Congress adopted Section 1825(b)(2), the statutory language can have no other meaning but that a taxing authority can foreclose its tax lien against property in which FDIC–Corporate holds a mortgage interest only so long as the FDIC–Corporate's mortgage is protected.

### 2. *Decisions of Other Courts.*

Decisions of other courts have interpreted Section 1825(b)(2) as protecting a lien interest of the FDIC. In *State v. Bankerd,* 838 S.W.2d 639 (Tex.App.1992, writ denied 1993), a Texas court recently reached exactly that conclusion in a case indistinguishable from this one, holding that "Congress did not intend for the state taxing authorities to have the power to reduce or destroy the value of the FDIC mortgage lien, a property interest." 838 S.W.2d at 643. *Accord Nueces County and Robstown Independent School*

---

**10.** Other courts have also held that federal lien interests must be protected when local taxing authorities foreclose their liens. *United States v. General Douglas MacArthur Senior Village, Inc.,* 470 F.2d at 680; *United States v. County of Richland,* 500 F.Supp. at 316–17; *United States v. Emergency Land Fund, Inc.,* 569 F.Supp. at 65.

*District v. Whitley Trucks, Inc.,* Case No. 89–4568–G (Tex.Dist.Ct. October 2, 1992) (currently on appeal to the Thirteenth Supreme Judicial District Court of Appeals of Texas)[11].

In *GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc.,* 998 F.2d 853, 856 (10th Cir.1993) the United States Court of Appeals for the Tenth Circuit held that Section 1825(b) precluded garnishment of proceeds from oil and gas production that were property of the FDIC, to which proceeding the FDIC had not consented.

In *Matagorda County v. Law,* Case No. G–92–111 (S.D.Tex. October 9, 1992) (currently on appeal to the United States Court of Appeals for the Fifth Circuit), the United States District Court for the Southern District of Texas ruled that foreclosure of local tax liens did not extinguish FDIC–Corporate's mortgage on real property. The court held: "the language of § 1825 could not be more specific in prohibiting foreclosure or sale without consent of the [FDIC]."

This Court also finds persuasive the language of 12 U.S.C. § 1821(d)(13)(C), which provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." The "receiver" includes FDIC–Corporate. 12 U.S.C. § 1823(d)(3)(A). Allowing the extinguishment of FDIC–Corporate's lien through the tax sale would amount to an "execution" or "attachment" on its assets and would be inconsistent with 12 U.S.C. § 1821(d)(13)(C).

11. A federal district court in Texas has reached a contrary decision. In *Birdville Independent School District v. Hurst Associates,* 806 F.Supp. 122 (N.D.Tex.1992) (appeal pending in the Fifth Circuit), the court held that Section 1825(b)(2) does not prevent a lien interest held by the Resolution Trust Corporation from being extinguished by foreclosure of tax liens. The *Birdville* decision rested on two erroneous subsidiary findings, however.

First, the district court concluded that a lien interest is not "property" within the meaning of Section 1825(b)(2). That finding is contradicted by the statute's plain language, which uses the all encompassing term "property," and by the sixty-five years of federal case law establishing unequivocally that federal lien interests are "property" not subject to the foreclosure of local tax liens.

The express language of Section 1825(b)(2) and the case law interpreting it are buttressed by its legislative history, which is reviewed below.

### 3. *The Legislative History of Section 1825(b).*

The legislative history of Section 1825(b) supports the conclusion that property interests of FDIC–Corporate should not be subject to foreclosure. FIRREA began with the introduction of companion administration bills in the House and Senate. The President's bill was introduced in the Senate as S. 413, 101st Cong., 1st Sess. (1989). 135 Cong. Rec. S1512 (1989). Section 216 of S. 413 provided that the FDIC would only be subject to local *ad valorem* property taxes and that:

> the failure of an insured financial institution to pay or remit any State, territorial, county, municipal or other local tax shall not subject the Corporation as receiver or conservator of that financial institution to any penalty, forfeiture, or limitation with respect to the enforceability of any right, title, or interest the Corporation as receiver or conservator may have and such failure to pay the tax shall only result in a claim for such tax against the estate of the financial institution.

135 Cong.Rec. S1525 (1989). Following markup, S. 413 emerged as a new bill, S. 774, which was reported out to the full Senate in S.Rep. No. 19, 101st Cong., 1st Sess. (1989) (the "Senate Report"). Section 220 of S. 774

Second, the district court reasoned that because the statute's protection against the attachment of involuntary liens does not apply until the RTC acquires ownership of the property against which the lien applies, "[i]t follows that neither does section 15(b)(2) [Section 1825(b)(2)] prevent foreclosure on property on which the RTC is a lienholder." But that holding is a nonsequitur. Simply because a state tax lien can attach to property in which a federal entity has an interest is no basis for concluding that the local taxing authorities can then *foreclose* their liens in derogation of the federal interest. Indeed, the Supreme Court in *New Brunswick,* 276 U.S. at 555–56, 48 S.Ct. at 372–73, 72 L.Ed. at 697–98 and the Ninth Circuit in *Rust,* 597 F.2d at 180 expressly rejected the very same analysis, holding that taxing authorities could tax the property and impose their liens, but could not *foreclose* those liens without fully protecting the federal interest.

carried forward the same tax exemption language originally introduced as Section 216 of S. 413. S.Rep. No. 19, 101st Cong., 1st Sess. 118 (1989). The Senate passed S. 774 without changing Section 220. 135 Cong.Rec. S4221, S4322 (1989).

On the House side, the President's bill was introduced as H.R. 1278, 101st Cong., 1st Sess. (1989). 135 Cong.Rec. H534 (1989). Section 216 of H.R. 1278 was identical to Section 216 of the original Senate bill. H.R. 1278 was sent to committee and reported out to the full House in H.R.Rep. No. 54(I), 101st Cong., 1st Sess. (1989) U.S.Code Cong. & Admin.News p. 86 (the "House Report"). The House Report revised H.R. 1278's tax exemption provisions by adding a new Section 217 to the bill. G. Pulles, R. Whitlock, J. Hogg, *FIRREA, A Legislative History and Section by Section Analysis* 277 (the "Legislative History").[12] The addition of Section 217 was effected as part of a set of conforming amendments offered by Congressman Gonzalez and adopted at the House markup session. *Id.* As relevant here, Section 217 added a new subsection (b)(2) to Section 15 of the Federal Deposit Insurance Act. The new language read:

> No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to property of the Corporation.

House Report at 73. This addition was:

> intended to provide that no State or municipal authority may interfere with the Corporation's management or liquidation of its property by seeking under State law to levy on, attach, garnish, foreclose upon, or force a sale of the Corporation's property.

Legislative History at 278. The House passed H.R. 1278 with Section 217 unchanged. 135 Cong.Rec. H2804 (1989).

The House and Senate bills then went to conference. In Section 219 of the revised H.R. 1278, the Conference Committee adopted the (b)(2) language passed by the House. H.R.Conf.Rep. No. 209, 101st Cong., 1st Sess. 85 (1989). That language was subsequently adopted by both House and Senate, and it became 12 U.S.C. § 1825(b)(2) on August 9, 1989. P.L. No. 101–73, 103 Stat. 183 (1989).

Section 1825(b)(2) plainly precludes Plaintiffs from enforcing their tax deed through a tax sale directly against the property interests held by the FDIC. That undisputed prohibition protects the FDIC's Bank Insurance Fund from losses it would otherwise suffer if foreclosure were allowed. As the FDIC noted when adopting its Tax Policy Statement:

> This prohibition [in Section 1825(b)(2)] recognizes the considerable burden faced by the [FDIC] in administering the assets involuntarily acquired by [it], and that substantial value would be lost to the [FDIC] solely because of lack of knowledge of the property interest if real estate tax liens could be enforced through the traditional sale or foreclosure remedies.

Reading Section 1825(b)(2) to preclude tax sales from indirectly extinguishing FDIC–Corporate's mortgage interests serves exactly the same policy. Indeed, it is the mortgage and lien interests that are the most important because, as noted in the Legal Memorandum accompanying the Tax Policy Statement, the largest category of assets which the Federal Deposit Insurance Corporation acquires in its capacity as receiver are loans secured by mortgage interests in real property. Once it is accepted that "property" includes mortgage interests, the phrase "subject to foreclosure" must be read as encompassing tax sales, because the only way that a mortgage interest can be "subject to foreclosure" is through the indirect effect of a tax sale and subsequent quiet title action; there can never be a direct foreclosure regarding the FDIC's mortgage interest under the express language of Section 1825(b)(2).

---

12. The House Report stated that Section 217: clarifies the existing provision specifying that the only kind of non-Federal tax to which the FDIC, in its corporate capacity or as receiver, is subject is a tax on real property. The exemption from taxation extends to the Corporation's property and operations in whatever capacity it is functioning, and particularly as a receiver for a national bank, a branch of a foreign bank, or a savings association (but not as receiver for a State bank under State law). House Report at 337.

The FDIC's position that any tax sale of the property be made subject to the FDIC's mortgage interest is thus entirely consistent with the statutory purpose articulated in the legislative history.

The interpretation of Section 1825(b)(2), as articulated in the policy statement, should be accorded deference under the well established doctrine that an agency's interpretation must be accepted if it reflects a plausible construction of the statute and does not otherwise conflict with Congress' expressed intent. *Rust v. Sullivan*, 500 U.S. 173, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233, 248 (1991); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82, 81 L.Ed.2d at 702–03 (1984); *County of Fairfax v. United States*, 1993 WL 62247 (D.D.C.1993); *Sybrandy v. U.S. Department of Agriculture*, 937 F.2d 443, 446 (9th Cir.1991); *RTC v. CedarMinn Building Limited Partnership*, 956 F.2d 1446, 1450–51 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992).

## IV. CONCLUSION

Based on the foregoing discussion, the Court holds that FDIC–Corporate's motion for summary final judgment is GRANTED. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Summary final judgment in hereby entered in favor of the FDIC–Corporate and against Plaintiffs, Cambridge Capital Corp. and Boston Investors Group, Inc., on Plaintiffs' Complaint, and against Defendant, Halcon Enterprises, Inc., on Counts I and II of FDIC–Corporate's Crossclaim.

2. The Court hereby declares that, pursuant to special rights granted to the Federal Deposit Insurance Corporation as Receiver (or FDIC–Corporate pursuant to 12 U.S.C. § 1823(d)(3)(A)) by Congress in 12 U.S.C. § 1825(b)(2), FDIC–Corporate's interest as a mortgagee was not extinguished by the tax sale and issuance of the tax deed and its mortgage survived these events.

3. Additionally, the Court hereby declares that 12 U.S.C. § 1825(b)(2) mandates that any property interest of the Federal Deposit Insurance Corporation survives a state tax sale, unless the Federal Deposit Insurance Corporation has consented to extinguishment of its interest.

4. The Court retains jurisdiction to award costs and attorneys' fees, if appropriate, on motion.

DONE AND ORDERED.